# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **SOUTHERN WHOLESALE** | ) | |
| **FIBERS & RECYCLING, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 4:19-CV-0049-VEH** |
| | ) | |
| **EVANSTON INSURANCE** | ) | |
| **COMPANY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## <u>MEMORANDUM OPINION</u>

This civil action was originally filed on December 10, 2018, in the Circuit Court of DeKalb County, Alabama, by the Plaintiff, Southern Wholesale Fibers & Recycling, Inc. ("Southern"), against the Defendants Evanston Insurance Company ("Evanston"), Thompson Insurance, Inc. ("Thompson"), and Robert W. Grubbs, individually and as an agent for Thompson. (Doc. 1-1 at 3). On January 9, 2019, Evanston removed the case to this Court. (Doc. 1). The case is now before the Court on the Plaintiff's Motion To Remand (the "Motion"). (Doc. 10). For the reasons set out herein, the Motion will be **GRANTED** and this case will be remanded. In the Motion, Southern also seeks an order pursuant to 28 U.S.C. § 1447(c) requiring Evanston to pay costs and fees associated with the removal. That request will be

**DENIED**.

## I.     STANDARD FOR REMAND

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377 (1994). "[T]he party seeking to remove [a] case to federal court bears the burden of establishing federal jurisdiction." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010) (internal quotations and citations omitted).

> That burden goes not only to the issue of federal jurisdiction, but also to questions of compliance with statutes governing the exercise of the right of removal. *Albonetti v. GAF Corporation-Chemical Group,* 520 F.Supp. 825, 827 (S.D. Texas 1981); *Jennings Clothiers of Ft. Dodge, Inc. v. U.S. Fidelity & Guaranty Co.,* 496 F.Supp. 1254, 1255 (D.Iowa 1980); *Fort v. Ralston Purina Company,* 452 F.Supp. 241, 242 (E.D.Tenn.1978).

*Parker v. Brown*, 570 F.Supp. 640, 642 (D.C. Ohio, 1983). The removal statute must be strictly construed against removal, and any doubts should be resolved in favor of remand. *See, City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court.") (citation omitted). Finally, in considering a motion to remand, a court may consider evidence

submitted after the removal petition is filed, "'but only to establish the facts present at the time of removal.'" *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 751 (11th Cir. 2010) (quoting *Sierminski v. Transouth Financial Corp*., 216 F.3d 945, 949 (11th Cir. 2000)).

Evanston removed this case alleging that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) (doc. 1 at 2), which provides, *inter alia*, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. §1332(a)(1). "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant.'" *Rivas v. The Bank of New York Mellon*, 676 F. App'x 926, 930 (11th Cir. 2017) (quoting, *Flintlock Constr. Servs., LLC v. Well–Come Holdings, LLC* 710 F.3d 1221, 1224 (11th Cir. 2013) (internal quotation marks omitted)). In the instant case there is no dispute that the Plaintiff, and Defendants Thompson and Grubbs, are all citizens of Alabama. However, Evanston contends that the citizenship of Thompson and Grubbs should be disregarded because they are "fraudulently joined." Under the doctrine of fraudulent joinder, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter

back to state court." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006).

"'In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'" *Berber v. Wells Fargo Bank, N.A.*, No. 18-11102, 2019 WL 126749, at *3 (11th Cir. Jan. 8, 2019) (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997)). In the instant case, Evanston argues only there is no possibility that Southern can establish a cause of action against either Thompson or Grubbs. "'The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.'" *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (quoting *Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir.1998)). The standard for analyzing the claims is "a lax one." *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1333 (11th Cir. 2011). As the Eleventh Circuit stated in *Stillwell*,

> "To determine whether the case should be remanded, the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law

in favor of the plaintiff." *Crowe*, 113 F.3d at 1538.1 In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir.1993). In other words, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir.1998)

This standard differs from the standard applicable to a 12(b)(6) motion to dismiss. To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In contrast, all that is required to defeat a fraudulent joinder claim is "a possibility of stating a valid cause of action." *Triggs*, 154 F.3d at 1287.

*Stillwell*, 663 F.3d at 1332–33. At the end of the day, this Court may deny the Motion To Remand only if Evanston has carried its burden to prove, by clear and convincing evidence, that there is no possibility that Southern can establish a cause of action against Thompson and/or Grubbs. *Henderson*, 454 F.3d at 1283. This burden is "a 'heavy one.'" *Crowe*, 113 F.3d at 1538.

## II. FACTS[1]

Southern owned two facilities – a plant on Sand Valley Road in Fort Payne, Alabama (the "Sand Valley Road plant"), and an older facility in Ider, Alabama (the "Ider plant"). (Doc. 10-1 at 2, ¶3). Both facilities were insured under policies issued by Evanston, and purchased by Southern through Thompson and its agent Grubbs. (Doc. 1-1 at 5, ¶7; doc.10-1 at 3, ¶¶ 4, 6). According to Terry Romans, the president of Southern,

> before January 5, 2017, the Ider facility had $2,970,900 in insurance limits for business personal property, and $1,800,000 in insurance limits for business income with extra expense. The Sand Valley Road plant had $800,000 in insurance limits for business personal property, and no insurance for business income with extra expense coverage.

(Doc. 10-1 at 3, ¶4). In the months before January of 2017, Southern expanded the Sand Valley Road plant and moved much of its operations there. (Doc. 10-2, ¶5). During this same time, Southern informed Grubbs and Thompson of these developments, and told Grubbs and Thompson that eventually it would need to

---

[1] In drafting this section of the opinion, the Court references the Complaint (doc. 1-1), and the Affidavit of Southern's president, Terry Romans (doc. 10-1). The Court notes at the outset that Mr. Romans's affidavit is the subject of a Motion To Strike (doc. 15) filed in connection with the pending Motion To Dismiss filed by Thompson and Grubbs (doc. 7). Thompson and Grubbs have filed a response to the Motion To Remand (doc. 16) referencing their Motion To Strike and urging the Court to ignore certain portions of the affidavit when considering the instant motion. (Doc. 16 at 3). However, the Court need not delve into the merits of the Motion To Strike at this time as its decision in this case is based solely on the allegations in the Complaint and the applicable law regarding fraudulent pleading. Mr. Romans's affidavit is referenced in this opinion only to provide background information.

transfer the larger business personal property coverage and the business income coverage from the Ider plant to the Sand Valley Road plant. (Doc. 1-1 at 5-6, ¶10; doc. 10-1 at 3, ¶5). According to Roman, Grubbs said that transfer of the coverages "would be fast and easy." (Doc. 10-1 at 4). Roman stated:

> More than once, Mr. Grubbs told Southern that moving the coverages would need only a phone call. Once Southern called him and directed him to make the change, Mr. Grubbs repeatedly assured Southern, he could transfer the coverages immediately.

(Doc. 10-1 at 4, ¶7) (*see also* doc. 1-1 at 5, ¶10 ("The Plaintiff . . . was informed by the Defendants that all they had to do was make a phone call, when appropriate.")).

On January 5, 2017, Southern called Grubbs and told Grubbs to move $2,000,000 in business personal property coverage, and $1,800,000 in business income coverage, from the Ider location to the Sand Valley Road location due to the fact that the Sand Valley Road site had significantly more equipment and work. (Doc. 10-1 at 4, ¶8) (*see also*, doc. 1-1 at 6, ¶11 ("Plaintiff . . . requested the Defendants to provide the appropriate changed or transfer of insurance coverage.")). Two days later, on January 7, 2019, a fire caused significant losses at the Sand Valley Road plant. (Doc. 1-1 at 5, ¶6; doc. 10-1 at 4, ¶9). As explained by Roman in his affidavit:

> That same day, Southern called Mr. Grubbs to report the loss and file a claim. Later, Mr. Grubbs told Southern that the requested change of coverages had not been made. The Sand Valley Road site was still covered under the old, lower-limits coverage for business personal

property, and had no business income with extra expense coverage. When Southern asked why he had not made the requested change, Mr. Grubbs answered (though this is a paraphrase) that the paperwork needed to secure the additional coverage for Sand Valley Road hadn't gone through.

(Doc. 10-1 at 4-5, ¶9) (*see also*, doc. 1-1 at 6, ¶11 ("Defendants failed to [secure the coverage].").

The loss was adjusted by Evanston under the policy limits which had been in effect prior to January 5, 2017, allegedly leaving Southern with at least $2,000,000 in unpaid business personal property losses and lost business income. (Doc. 10-1 at 5). Southern also alleges that there are unpaid and disputed amounts that it seeks from Evanston due to the damage to the building structure. (Doc. 10-1 at 5). According to Roman

Because Southern has not had the benefit of the greater coverage that it directed Mr. Grubbs to procure, it has not been able to completely repair its Sand Valley Road plant. For example, the plant's roof has not been repaired. Rain has gotten in and caused additional damage to equipment, [and] material and has slowed production. Over the two years that Evanston has been disputing the amount of Southern's loss, Southern has thus suffered additional damage. This damage is a direct result of the defendants' respective breaches of their obligations to Southern.

(Doc. 10-1 at 5) (*see also*, doc. 1-1 at 6, ¶13).

## III.   ANALYSIS

### A.   <u>Thompson and Grubbs Were Not Fraudulently Joined</u>

As noted above, Evanston claims that Thompson and Grubbs have been fraudulently joined because there is no possibility that Southern can establish a claim against them. In the instant case, the Complaint alleges that "Thompson and Grubbs . . . breached their contract and obligation to the Plaintiffs by not properly insuring the Plaintiff's premises, after committing to and agreeing to do so." (Doc. 1-1 at 7, ¶18) (Count One). It also alleges that Thompson and Grubbs negligently procured insurance coverage for Southern. (Count Three).  In order to demonstrate fraudulent joinder then, Evanston must carry its "heavy burden" to prove, by "clear and convincing evidence," that there is no possibility that Southern can establish either cause of action. *Crowe*, 113 F.3at 1538; *Henderson*, 454 F.3d at 1281. At least as to the negligent procurement claim, it has not done so.

Alabama recognizes the tort of negligent failure to procure insurance. *See Alfa Life Ins. Corp. v. Colza*, 159 So. 3d 1240, 1248 (Ala. 2014); *Albert v. Hsu*, 602 So.2d 895, 897 (Ala.2002). "When an insurance agent or broker undertakes to procure insurance for a client, and . . . negligently fails to do so, he becomes liable for any damage resulting therefrom." Bibb Allen, *Alabama Liability Insurance* Handbook 38 (1996) (citing *Northington v. Dairyland Ins. Co.*, 445 So. 2d 283 (Ala. 1984);

*Highlands Underwriters Ins. Co. v. Elegante Inns, Inc.*, 361 So. 2d 1060 (Ala. 1978); *Timmerman Ins. Agency, Inc. v. Miller*, 285 Ala. 82, 229 So. 2d 475 (1969)). "Like any negligence claim, a claim in tort alleging a negligent failure of an insurance agent to fulfill a voluntary undertaking to procure insurance ... requires demonstration of the classic elements of a negligence theory, i.e., (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Colza*, 159 So. 2d at 1248 (internal quotations and citations omitted).

Evanston argues that the Complaint "contains specific allegations that belie these claims." (Doc. 1 at 7). In particular, in its Notice of Removal, Evanston quotes the following language:

> Upon information and belief, Defendant Grubbs <u>did the acts necessary to effect Plaintiff's additional coverage</u>, and Defendant Thompson <u>received that information and effected coverage</u>. The fire that damaged Plaintiff's premises occurred a few days later. The Defendant Evanston has <u>adjusted the loss using the old levels of coverage</u>.

(Doc. 1 at 7) (quoting doc. 1-1 at 10, ¶27) (emphasis added in Notice of Removal retained). Evanston argues that this language, which appears in Southern's <u>conspiracy</u> claim, pleads that the very coverage Southern sought from Thompson and Grubbs <u>was</u> procured as requested. For this reason, Evanston argues that there is no possibility that Southern could recover from Thompson and Grubbs for negligent procurement.

Importantly, the language quoted by Evanston appears in only one Count of the Complaint, the conspiracy count, and Evanston's interpretation of that language[2] conflicts with every other pertinent factual averment in the Complaint. For example, in its "General Averments" the Complaint alleges that

> "Plaintiff advised the Defendant fully of its business operations and requested the Defendants to provide the appropriate changes or transfer of insurance coverage to the primary premises. <u>Defendants failed to do so.</u> As a result, Plaintiff has suffered substantial damages. <u>But for the conduct of the Defendants, Plaintiff would have had additional coverage</u>."

(Doc. 1-1 at 6, ¶11) (emphasis added). The Complaint also clearly discusses "coverage mistakes" by the Defendants. (Doc. 1-1 at 6, ¶12). Further, and as noted above, the breach of contract claim against Thompson and Grubbs clearly states that

---

[2] Southern's position is that the language does not mean that the additional coverage was actually procured. Southern notes in its Motion To Remand that the allegations in the conspiracy claim are

> part of a thread that poses the following [alternative] theory of recovery: If Grubbs did take the steps needed to effect coverage (i.e., to transfer the larger coverages to Sand Valley Road), but that new insurance <u>was not put in place</u>, then it is possible that (and Southern alleges that) the defendants all worked together to block the requested change, so that Evanston would not face greater exposure under the new policy. And that, ultimately, Evanston "adjusted the loss using the old" coverage.

(Doc. 10 at 14) (emphasis added). The Plaintiff insists that "[e]ven under the alternative . . . claim, Grubbs and Thomspn *still did not procure the promised insurance*." (Doc. 20 at 3) (emphasis in original); *see also generally* doc. 20 at 3-5. While the Court must cast the Complaint's allegations in the light most favorable to Southern, *Crowe*, 113 F.3d at 1538, the language quoted by Evanston seems to say that Thompson and Grubbs did what Southern asked them to do, that Evanston then insured the Sand Valley Road plant at the higher levels, and, for some reason, Evanston is adjusting the claim using the old limits. Regardless, it makes no difference in this Court's analysis.

these Defendants did not "properly insur[e] the Plaintiff's premises, after committing to and agreeing to do so." (Doc. 1-1 at 7, ¶18). In the negligence procurement count, Southern clearly alleges that these Defendants "fail[ed] to update, transfer and provide appropriate coverage for the Plaintiff's primary operational location." (Doc. 1-1 at 10, ¶25). Therefore, the question becomes, does the language quoted by Evanston supercede these other conflicting allegations?

Evanston cites *Broadway v. State Farm Mut. Auto. Ins. Co.*, 683 F. App'x 801 (11th Cir. 2017)[3], for the proposition that "Southern cannot vaguely allege on the one hand that there was some sort of negligent procurement, while at the same time specifically claiming that the . . . Defendants did what they were supposed to do." (Doc. 1 at 7). First, there is nothing "vague" about Southern's allegations that coverage was not procured. They are at least as specific as the allegations Evanston relies on. Second, the *Broadway* case had nothing to do with fraudulent joinder or the consequences of pleading inconsistent facts. The plaintiff in that case appealed from the district court's denial of his motion to amend to add a claim against the defendant for negligent procurement. The Eleventh Circuit affirmed the denial finding that "[t]he proposed amended complaint contained no allegation—and nothing

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." U.S. Ct. of App. 11th Cir. Rule 36-2.

evidences—that [the defendant] failed to procure Plaintiff the insurance coverage that Plaintiff requested and that [the defendant] agreed to provide." *Broadway*, 683 F. App'x at 804. Thus, the Eleventh Circuit conducted a futility analysis, which examines whether "the complaint as amended would still be properly dismissed." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). As the Eleventh Circuit noted in *Stillwell*, the standard for granting a motion to dismiss is altogether different than the standard for establishing fraudulent joinder. *See Stillwell*, 663 F.3d at 1332–33. Furthermore, the Complaint in the instant case does contain allegations that Thompson and Grubbs failed to procure the requested coverage.

Southern argues that the conspiracy claim "embodies an alternative theory of relief." (Doc. 10 at 14). Both the Alabama and Federal Rules of Civil Procedure allow pleading in the alternative. *See* ALA. R. CIV. P. 8(a) ( noting that "[r]elief in the alternative or of several different types may be demanded"); *U.S. Fid. & Guar. Co. v. Warwick Dev. Co.*, 446 So. 2d 1021, 1024 (Ala. 1984) (noting that pursuing claims for relief in the alternative is "expressly allowed by the Alabama Rules of Civil Procedure")[4]; FED. R. CIV. P. 8 (noting that pleadings may contain "alternative or

---

[4] In attempting to explain how the allegations in the instant case are not proper, Evanston argues that the *Warwick* Court "distinguished between presenting true alternative theories of recovery (which the plaintiffs were trying to do there) and affirmatively seeking to recover pursuant to contradictory allegations (which Southern is trying to do here)." (Doc. 17 at 11). It provides no citation or further elaboration on this point. Indeed, *Warwick* seems to state the opposite in that the Court there allowed the plaintiff to plead rescission and breach, two

different types of relief").[5] Evanston argues that the claim cannot be an alternative claim because conspiracy "is not an independent cause of action." (Doc. 17 at 8).

Evanston is correct that, in Alabama, "when alleging conspiracy, a plaintiff must have a viable underlying cause of action." *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993). Where Evanston's argument goes awry is when it contends that the underlying causes of action for the conspiracy claim must be the negligent procurement and contract claims against Thompson and Grubbs. Evanston argues that because each Count in the Complaint realleges and adopts all previous factual allegations, the conspiracy claim is "derivative of [the] other claims." (Doc. 17 at 10; *see also* doc. 17 at 11-12 ("Because the conspiracy claim is predicated on the other wrongful acts alleged, Southern's factual allegations that the . . . Defendants "did the acts necessary to effect Plaintiff's additional coverage . . . and effected coverage" are applicable to all of Southern's claims and completely preclude

_____

contradictory theories. The *Warwick* court specifically noted that alternative pleading allowed a plaintiff to state alternative grounds for liability "regardless of consistency." *Warwick*, 446 So. 2d at 1024 (citing *Breeding v. Massey*, 378 F.2d 171, 178 (8th Cir.1967); *German v. Carnegie-Illinois Steel Corporation*, 156 F.2d 977, 979 (3rd Cir.1946); *E.H. Boly & Son, Inc. v. Schneider*, 525 F.2d 20 (9th Cir.1975); *Bernstein v. United States*, 256 F.2d 697, 706 (10th Cir.1958), *cert. dismissed*, 358 U.S. 924, 79 S.Ct. 296, 3 L.Ed.2d 298 (1959)).

[5] Southern states that "[a]lternative pleading of some sort was, in fact, a practical necessity. At the time of pleading, it was impossible to know with certainty exactly why the requested coverage had not been placed on Sand Valley Road." (Doc. 10 at 15; *see also generally* doc. 10 at 15-17).

Southern from claiming otherwise.")). First, Evanston has not cited, nor is the Court aware of any authority for the proposition that the pleading technique used by Southern dictates which counts are derivative of each other.[6] Second, Evanston's argument forecloses the possibility that the Conspiracy claim was pleaded <u>in the absence of a supporting underlying claim</u>, a point which no party has addressed. If that were the case, only the conspiracy claim would fail. Finally, reading the negligence claim as the underlying claim defies logic, as <u>the Defendants cannot conspire to be negligent</u>.[7]

Evanston cites *Selby v. Goodman Mfg., Co., LP*, No. 2:13-cv-2126-RDP, 2014 WL 2740317 (N.D. Ala. June 17, 2014) (Proctor, J.) for the proposition that the pleading of contrasting facts forecloses alternative pleading. Not only is *Selby* not binding on this Court, it is procedurally and factually distinguishable. First, and as noted by Evanston[8], the motion before the Court in *Selby* was a motion to dismiss. Once again, in contrast to the plausibility standard employed in that case, all that is

---

[6] Interestingly, in addition to the language in the conspiracy count relied upon by Evanston, that count also "realleges and adopts all of the foregoing paragraphs of the complaint as if more fully set out herein." (Doc. 1-1 at 10, ¶26). It has therefore incorporated the allegations that additional coverage was <u>not</u> procured, making the conspiracy count factually inconsistent with itself.

[7] The Court also finds no merit in Evanston's argument that "there is no language in [the] Complaint indicating that the conspiracy claim is being asserted 'in the alternative.'" (Doc. 17 at 12). Nothing in the rules requires such a designation.

[8] *See* doc. 17 at 12, n. 5.

required to defeat a fraudulent joinder claim is "a possibility of stating a valid cause of action." *Triggs*, 154 F.3d at 1287. Second, in *Selby* the plaintiff pleaded breach of a contractual warranty and an equitable claim of unjust enrichment, and claimed that, despite the inconsistency in the two claims[9], she could plead the two claims alternatively. *Selby*, 2014 WL 2740317, at *6. Judge Proctor foreclosed the unjust enrichment claim because of "the undisputed existence of a contract." *Id.* The plaintiff pleaded the existence of a contract, and attached it to the Complaint. As noted by another Judge in this district, the plaintiff in *Selby* "did not simply weaken their unjust enrichment claim[] by alleging that a contract existed; their allegations foreclosed the unjust enrichment claim[] entirely." *Davis*, 2018 WL 2943453, at *4.

In the instant case, the Defendants do <u>not</u> agree that they provided the additional coverage Southern requested. In a footnote, Evanston notes this distinction, but argues that it is immaterial because "the allegations in Southern's Complaint control." (Doc. 17 at 14, n. 6). However, there is a difference between alleging divergent facts supporting different causes of action, and alleging facts which "foreclose . . . claims entirely." Furthermore, if the allegation of inconsistent facts were enough to eliminate one cause of action or another, the Defendants do not

---

[9] "Under Alabama law, the existence of an express contract entirely precludes an unjust enrichment claim." *Davis v. Infinity Ins. Co.*, No. 2:15-CV-01111-JHE, 2018 WL 2943453, at *4 (N.D. Ala. June 12, 2018) (England, J.).

explain why the <u>conspiracy</u> claim should not be the claim eliminated as that claim alone is inconsistent <u>with the rest of the Complaint</u>. Only when allegations clearly, and indisputably eliminate the possibility of a plaintiff succeeding on a cause of action should <u>that</u> cause of action, alone, be eliminated. Upon remand, the state court can determine which, if any, claims remain viable in light of the pleadings. It is enough that this Court determines that there is a possibility that Southern can succeed on the negligence claim.[10]

In its Notice of Removal, Evanston also cites two fraudulent joinder cases from the undersigned: *Brawley v. Nw. Mut. Life Ins. Co.*, 288 F. Supp. 3d 1277 (N.D. Ala. 2017) (Hopkins, J.) and *Brown v. State Farm Fire & Cas. Co. & Donald Taylor*, No. 1:16-CV-1390-VEH, 2017 WL 492992, at *1 (N.D. Ala. Feb. 7, 2017) (Hopkins, J.). Both cases are factually distinguishable.

In *Brawley*, this Court found that Alabama's rule of repose, and the applicable statute of limitations, eliminated any possibility that the plaintiff could maintain most if his claims against the non-diverse defendants. *Brawley*, 288 F. Supp. 3d at 1288, 1292, 1293. Furthermore, the plaintiff in that case admitted in his complaint facts

---

[10] Evanston also attacks Roman affidavit arguing that it "does not address the other factual allegations in the Complaint that contradict the negligent procurement count." (Doc. 17 at 14). Because the Court holds that the contradiction does not matter, this argument is without merit.

which established contributory negligence, making it impossible for him to recover on his negligence procurement claim against the non-diverse defendants. *Id.* at 1295. Similarly, in *Brown*, this Court found that the plaintiff could not possibly recover on his negligent procurement claim because he had pled facts establishing contributory negligence. *Brown*, 2017 WL 492992, at *7. In the instant case there are no such clear cut bars to recover in the pleadings.[11]

Defendants Thompson and Grubbs argue that Southern's negligent

---

[11] Evanston also argues:

> Southern cannot maintain a breach of contract claim against both Evanston and the Thompson Defendants, because in doing so it concedes that the Policy actually issued and was in place. . . . In *Brown*, the Court found that "by alleging breach of contract and other contract-based claims against State Farm, [the insured] concedes that insurance was in fact procured." *Brown*, 2017WL492992 at *8. For breach-of-contract purposes, "[t]his is not a situation where [the agent] altogether failed to procure any insurance for [the insured], nor is it the case that, upon failing to procure that insurance, [the agent] negligently neglected to notify [the insured] of his inability to procure coverage." *Id*. The Court further noted that the agent "admits there was a policy in full force and effect." *Id*. The Court then found that because there were no allegations of some additional promise above and beyond one to procure insurance, there was no basis that a breach of contract claim against the agent could proceed, based on Alabama's merger doctrine. *Id*. at *9.

> The present case is no different.

(Doc. 1 at 8-9). Although this argument is not directed at the negligent procurement claim, the Court notes that the instant case is factually distinguishable from *Brown*. In *Brown,* the plaintiff purchased a policy of insurance, and then, after he suffered a loss, alleged breach of contract when his loss was not covered. In *Brown* there was a promise to procure insurance which was fulfilled. The instant case, by contrast, is the "situation where [the Defendants] altogether failed to procure any insurance for [Southern]." *Brown*, 2017 WL 492992, at *8. Thompson and Grubbs agreed to provide the addition coverage and then did not do so.

procurement claim fails because

> Plaintiff merely alleges that Grubbs failed to undertake the transfer, and
> but for his failure to do so, *Southern would have had additional*
> *coverage*. The mere fact that it did not have additional coverage, is not
> an actionable claim, however, without damage flowing from the failure
> to have obtained the additional coverage. Plaintiff has failed to allege in
> its pleadings, motions, responses, or affidavit, that any of the property
> allegedly moved from Ider to the Sand Valley location was damaged.
> Plaintiff has failed to allege a necessary element of damages.

(Doc. 16 at 7). This argument is misplaced in light of the fact that the motion before

the Court is not a motion to dismiss, and the "lax" standard this Court must use to

evaluate whether there is a possibility that Southern could succeed on this claim.

*Stillwell*, 663 F.3d at 1333. The Eleventh Circuit has noted that "[n]othing in our

precedents concerning fraudulent joinder requires anything more than conclusory

allegations or a certain level of factual specificity." *Id.* at 1334. When these factors

are considered, Southern's allegations that the Defendants failed to procure the

coverage and "[a]s a result, Plaintiff has suffered substantial damages" (doc. 1-1 at

6, ¶11), establishes a "possibility" of success on this claim.

Thompson and Grubbs also argue that "there are no allegations that Evanston

has denied a claim to Southern based upon the alleged failure to procure the transfer

of coverage." (Doc. 16 at 7). This contention is based on the fact that all parties agree

that <u>some</u> policy was in effect that the time of the fire. It ignores the true nature of

Southern's claim, which is that Evanston has refused to pay the <u>additional</u> amounts which it would have been required to pay had Thompson and Grubbs secured the extra coverage Southern requested. Regardless, such is the stuff of Motions To Dismiss.[12]  Based on the allegation that the coverage was not procured and Southern suffered damage therefrom, there is a possibility that Southern could succeed on this claim.

For all of the foregoing reasons, the Court holds that Evanston, Thompson and Grubbs have failed to shoulder their "heavy burden" of demonstrating by "clear and convincing evidence" that there is no possibility that Southern cannot recover against Thompson and Grubbs on the negligent procure claim. Accordingly, Thompson and Grubbs were not fraudulently joined, and this case is due to be remanded for lack of subject matter jurisdiction.[13] A separate order remanding this case will be entered.

---

[12] Even if it were proper to examine the sufficiency of the pleadings in this context, the negligent procurement claim satisfies the Alabama notice pleading standards which the Court must apply. *Stillwell*, 663 F.3d at 1334 ("To determine whether it is possible that a state court would find that the complaint states a cause of action, we must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court."); *Ex parte Burr & Forman, LLP*, 5 So. 3d 557, 566 (Ala. 2008) ("[T]he Alabama Rules of Civil Procedure have established notice pleading.") (internal quotations and citations omitted).

[13] In light of this finding, the Court need not address whether Southern could possibility prevail on its other claims against Thompson and Grubbs.

**B.    Costs and Attorney's Fees Pursuant to 28 U.S.C. § 1447(c)**

In its Motion To Remand, Southern asks this Court to award costs, including attorney's fees, under 28 U.S.C. § 1447(c) which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Eleventh Circuit has noted:

> The Supreme Court has held that even though 28 U.S.C. § 1447(c) allows a court to require payment of just costs and attorneys' fees incurred as a result of removal, such fees "should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). The Supreme Court has further instructed that the "appropriate test for awarding fees under § 1447(c)" is to balance between deterring "removals sought for the purpose of prolonging litigation and imposing costs on the opposing party," and safeguarding defendants' statutory right "to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140, 126 S.Ct. 704.

*Bujanowski v. Kocontes*, 359 F. App'x 112, 113–14 (11th Cir. 2009). "But an award of fees under § 1447(c) does not require a showing that the defendant's position was "'frivolous, unreasonable, or without foundation.'" *Taylor Newman Cabinetry, Inc. v. Classic Soft Trim, Inc.*, 436 F. App'x 888, 890 (11th Cir. 2011) (quoting *Martin*, 546 U.S. 138–39). "The denial of costs and fees under 28 U.S.C. § 1447(c) is reviewed for abuse of discretion." *Bauknight v. Monroe Cty., Fla.*, 446 F.3d 1327, 1329 (11th Cir. 2006).

Despite the Court's decision to remand this case, the Court, in its discretion,

holds that Evanston had an objectively reasonable basis for removal. Evanston relied in part on the language in the conspiracy count of the Complaint which, objectively, conflicts with the language in the rest of the Complaint. To this Court's knowledge, there is no Eleventh Circuit precedent which has directly addressed the issues in this opinion. Furthermore, while the cases cited by Evanston are factually (and sometimes procedurally) distinguishable, they are not so clearly off the mark as to make Evanston's reliance on them objectively unreasonable. In short, it does not appear that the removal was done for the purpose of prolonging the litigation, so the balance tips in favor of allowing a defendant under these circumstances to remove as a general matter, without fear of costs and attorney's fees. The Motion for fees and costs will be **DENIED**.

      **DONE** and **ORDERED** this 21st day of May, 2019.

**VIRGINIA EMERSON HOPKINS**
Senior United States District Judge